Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4499 | **DATE** | December 5, 2002 |
| **CASE TITLE** | *Brian Jones vs. Dr. R.K. Natesha, et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court: (1) grants defendant Natesha's motion for summary judgment [146-1], (2) grants defendant Sood's motion for summary judgment [123-1], (3) grants defendant Zhang's motion for summary judgment [117-1], (4) grants defendants Tilden, Aguinaldo and Smith's motion for summary judgment [118-1], and (5) denies as moot defendant Natesha's motion to strike [139-1]. All other pending motions are stricken as moot. Judgment is entered in favor of defendants and against plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 147 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | 02 DEC -5 PH 5:33  FILED TO  Date/time received in central Clerk's Office | date mailed notice  mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 00 C 4499 |
| ) | |
| DR. R.K. NATESHA, DR. SOOD, DR. ZHANG, ) | Judge James H. Alesia |
| DR. A. TILDEN, DR. EVARISTO AGUINALDO ) | |
| AND DR. JOSEPH K. SMITH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the court are: (1) a motion for summary judgment filed by defendant Dr. R.K. Natesha, (2) a motion for summary judgment filed by defendant Dr. Sood, (3) a motion for summary judgment filed by defendant Dr. Zhang, (4) a motion for summary judgment filed by defendants Dr. A. Tilden, Dr. Evaristo Aguinaldo, and Dr. Joseph K. Smith, and (5) defendant Dr. R.K. Natesha's motion to strike certain portions of plaintiff's Local Rule 56.1(b)(3)(B) statement of facts. For the following reasons, the court (1) grants defendant Natesha's motion for summary judgment, (2) grants defendant Sood's motion for summary judgment, (3) grants defendant Zhang's motion for summary judgment, (4) grants defendants Tilden, Aguinaldo, and Smith's motion for summary judgment, and (5) denies as moot defendant Natesha's motion to strike.[1]

---

[1] Defendant Natesha moves to strike from the plaintiff's 56.1(b)(3)(B) statement of facts the factual allegations regarding the other defendants' treatment of Jones. Natesha also
(continued...)

# I. BACKGROUND[2]

Plaintiff Brian Jones ("Jones"), an inmate at Stateville Correctional Center ("Stateville") in Illinois, brings this action under 42 U.S.C. § 1983 ("§ 1983") against individual medical personnel who provided him treatment for hemorrhoids while he was housed at Stateville and Joliet Correctional Center ("Joliet"). Specifically, Jones argues the defendants violated the Eighth Amendment by acting with deliberate indifference to his hemorrhoid condition.

Jones has a history of rectal bleeding and discomfort beginning in November of 1995. From August 1998 to October 1999, Jones was incarcerated at Joliet and was under the medical care of Dr. Lping Zhang ("Zhang") and Dr. Kul B. Sood ("Sood"). On August 25, 1998, Jones was examined by Zhang who found Jones was suffering from "bleeding hemorrhoids." On October 21, 1998, surgeon Dr. R.K. Natesha ("Natesha") performed a hemorrhoidectomy on Jones. For the next few months Jones complained of rectal bleeding or discomfort to Zhang and Sood and was given such medications as Metamucil, suppositories, and Benadryl. On May 5, 1999, Natesha examined Jones and recommended Jones undergo a colonoscopy. There is no evidence the colonoscopy procedure was ever performed. Jones continued to complain of rectal

---

[1](...continued)
challenges the qualifications of Dr. James H. Martin, the plaintiff's expert witness. Even if the court considered these portions of plaintiff's statement of facts and Dr. Martin's testimony, the court still would grant defendant's motion for summary judgment. Therefore, the court denies as moot defendant's motion to strike.

[2]Unless otherwise indicated, the following facts - taken from the parties' Local Rule 56.1 statements – are undisputed. The court notes that in defendant Sood's reply to plaintiff's statement of facts, Sood failed to cite any supporting evidence in denying plaintiff's allegations as required by Local Rule 56.1. Thus, as to Sood, the court deems admitted all factual allegations contained in plaintiff's statement of facts. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 689 (7th Cir. 2000).

problems while Sood and Zhang continued with the same course of treatment with medications. On September 28, 1999, Jones filed an "Emergency Grievance" against Sood, Zhang, and Natesha for "failing to treat him for his ongoing pain and discomfort and bleeding."

Jones was transferred to Stateville on October 5, 1999 where he was under the care of Dr. Joseph K. Smith ("Smith"), Dr. Andrew Tilden ("Tilden"), and Dr. Evaristo Aguinaldo ("Aguinaldo"). On October 9, 1999, Jones wrote a letter to Smith requesting prompt medical attention for his bleeding and stating he had been refused medical attention. On October 15, 1999, Jones filed a grievance complaining he had a very serious medical problem and had been refused medical treatment. Jones was seen by Tilden on October 16, 1999 and referred to Natesha. On November 17, 1999, Natesha examined Jones and recommended surgery. Natesha performed surgery, which involved the excision of a sinus or abscess, on December 20, 1999. Natesha's pre-op notes from the December 1999 surgery state that Jones had undergone a hemorrhoidectomy "a couple of years ago." This information was incorrect as Natesha performed the surgery in October 1998.

One Stateville record, dated February 2, 2000, indicates that Smith "refused to see inmate." Jones filed a grievance on February 14, 2000 regarding his failure to receive treatment from Smith and his rectal problems. On March 2, 2000, Smith responded to Jones's grievance and denied refusing to see Jones when he was properly scheduled.

On June 1, 2000, Natesha performed a third surgery on Jones for excision of a perianal sinus, the excision of thrombosed hemorrhoids, and the incision and drainage of a pilonidal cyst abscess. Natesha's pre-op notes did not reference the surgery of December 1999, but stated a

3

"history of hemorrhoidectomy a few years ago" under "past medical history." From the end of July 2000 through February 2001, Jones made several complaints of discomfort and bleeding, including a letter to Smith on August 23, 2000. The doctors at Stateville responded by providing medication, consulting with Dr. Natesha to discuss diagnostic tests, providing a consultation with a nutritionist, and referring Jones to a specialist at the University of Illinois-Chicago Hospital. On February 1, 2001, Jones underwent a fourth surgery at the University of Illinois-Chicago Hospital for recurrent pilonidal cysts. In May 2001, Jones wrote Smith informing him that another growth had formed in his rectum and asking him for treatment. Jones filed a grievance later that month stating that Smith and Aguinaldo in addition to other staff physicians had refused to treat him.

Jones filed a one-count amended complaint alleging that each defendant violated his constitutional right to reasonable medical care and treatment in violation of § 1983. Jones is suing all of the defendants in their individual capacities and alleges that they all acted in the course and scope of their employment and under color of state law. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. On July 12, 2001, this court denied defendants Natesha's and Sood's motions to dismiss plaintiff's amended complaint. *Jones v. Natesha*, 151 F. Supp. 2d 938 (N.D. Ill. 2001). This matter is currently before the court on each defendant's motion for summary judgment.

## II. DISCUSSION

### A.  Summary judgment standard

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no

4

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

The burden is on the moving party to show that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson*, 477 U.S. at 256. Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256-57; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### B. Section 1983 Claim

To prevail on a claim pursuant to § 1983, a plaintiff must establish that (1) the defendants were acting under color of state law and (2) the defendants deprived him of a right or an interest secured by the Constitution or laws of the United States. *Chavez v. Illinois State Police*, 251

5

F.3d 612, 651 (7th Cir. 2001). The court will first determine whether Jones was deprived of a right secured by the Constitution.

Each defendant argues that Jones cannot make a showing of such a deprivation. Jones claims he was deprived of his constitutional right to medical attention. The Eighth Amendment provides this right to prisoners by protecting them from deliberate indifference to serious medical needs. *Walker v. Benjamin*, 293 F.3d 1030, 1036-37 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). This applies to prison doctors in their response to prisoners' needs as well as to prison guards. *Estelle*, 429 U.S. at 104. In order to succeed on his § 1983 claim, Jones must show that (1) he had a serious medical need and (2) the defendants were deliberately indifferent to it. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). The court previously determined – and the parties do not dispute – that Jones's hemorrhoid condition constitutes a serious medical need. *Jones*, 151 F. Supp. 2d at 944. Therefore, the only remaining issue is whether the defendants acted with deliberate indifference.

Deliberate indifference by prison officials exists when "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Liability attaches only if the conduct is intentional or criminally reckless, neither negligence nor gross negligence is sufficient. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238-39 (7th Cir. 1991)).

In the medical care context, deliberate indifference can arise by failing to provide prompt treatment for serious medical needs or by an intentional interference with prescribed treatment. *Id.* at 845-46 (citing *Estelle*, 429 U.S. at 104-05). Deliberate indifference may be inferred from a doctor's treatment decisions only if his actions represent "'a substantial departure from accepted professional judgment, practice, or standards.'" *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (quoting *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996)). "[I]nadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations." *Puente v. Malone*, No. 00 C 5500, 2001 WL 1512543, at *4 (N.D. Ill. Nov. 28, 2001). Nor do "[m]ere differences of opinion among medical personnel regarding a patient's appropriate treatment" give rise to deliberate indifference. *Mazariegos v. Cooper*, No. 99 C 7628, 2001 WL 293121, at *2 (N.D. Ill. Mar. 23, 2001) (citing *Estelle*, 429 U.S. at 107). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The court must examine the totality of the inmate's medical care in determining whether that care constitutes deliberate indifference to his serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997).

The defendants argue that Jones failed to show deliberate indifference to his medical needs and that they met the standard of care in providing treatment to Jones. In support of their position the defendants rely on Jones's medical records. Jones argues that there are several

material facts at issue regarding whether the defendants acted with deliberate indifference. Specifically, Jones asserts that the defendants: (1) refused at times to treat or examine Jones and (2) failed to alter ineffective treatment.[3] Additionally, Jones argues that the medical records are not reliable. First, the court will address the reliability of Jones's medical records. Second, the court will evaluate Jones's claim that the defendants refused to treat or examine him. Third, the court will address Jones's claim that the defendants failed to alter ineffective treatment.

1. **Reliability of medical records**

As a threshold matter, the court will address the reliability of the medical records. The defendants refute Jones's claim of deliberate indifference by citing to the medical records, which document the extensive treatment they provided Jones. Jones responds by arguing the medical records cannot be relied upon because the physicians did not always document their interactions with him. Jones contends that, on one occasion, Dr. Aguinaldo told Jones he would not record his examination because he did not want to help Jones with his lawsuit.

Jones provides no evidence to support his allegations that the medical records are inaccurate. *See Moss v. Mormon*, No. 99 C 3571, 2001 WL 1491183, at *4 (N.D. Ill. Nov. 26, 2001) (finding plaintiff could not succeed by merely challenging the validity of his medical

---

[3]Jones also asserts Smith disparaged and publicly humiliated Jones. Jones claims Smith called him names like "butt boy," "asshole," and "pain in the ass" in front of other Stateville staff. Smith denies that any such statements were made. If these allegations are true, such behavior is inappropriate; however, a claim of defamation is irrelevant to a deliberate indifference analysis. *See Carr v. Harry*, No. 01 C 5203, 2001 WL 1654714, at *3 (N.D. Ill. Dec. 20, 2001) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 262 (7th Cir. 1999)) (finding defamation is not actionable as a deprivation of liberty within the meaning of the due process clause in inmate's § 1983 case).

8

records). Jones's testimony states the doctors failed to chart his consultations, not that they fabricated information. Thus, even if the medical record entries are not as detailed as Jones would like, they are, at a minimum, an accurate reflection of the dates and type of treatment provided. Plaintiff's assertion that Aguinaldo refused to chart his consultation with Jones is belied by Jones's medical records, which contain an entry by Aguinaldo on the date in question. Thus, it is appropriate for the court to rely upon Jones's medical records and the testimony of the parties in evaluating Jones's claim of deliberate indifference. *See Estelle*, 429 U.S. at 107 (discussing the extensive medical treatment provided to inmate in evaluating § 1983 claim of deliberate indifference to serious medical needs).

### 2. Refusal to treat or examine Jones

Jones asserts that the defendants' refusal to treat or examine him constitutes deliberate indifference. Jones has testified that each of the defendants has denied or refused him medical treatment. In support of his testimony Jones cites to grievances and letters he wrote to the defendants and prison officials. There is also a record from the Illinois Department of Corrections indicating Smith "refused to see inmate." Jones also argues he was not examined every time he met with a physician. In support of his case, Jones offers the testimony of Dr. James H. Martin ("Martin") as an expert witness regarding the relevant standard of care.[4]

---

[4]Defendants Zhang, Smith, Aguinaldo, and Tilden object to plaintiff's reliance upon Martin's expert report because they argue it is hearsay and inadmissible. The court need not address this issue because even if the court considered the expert report, the court still would grant defendants' motions for summary judgment.

Contrary to Jones's assertion that the defendants refused to provide medical treatment, the medical record, as discussed in the testimony of the parties, demonstrates the defendants were responsive to Jones's medical needs. *See Gutierrez*, 111 F.3d at 1374 (finding plaintiff repeatedly received treatment and could not show deliberate indifference); *Hunt v. Nelson*, No. 96 C 50261, 1997 WL 760506 (N.D. Ill. Dec. 1, 1997) (rejecting claim where inmate alleged doctors had knowledge of his medical condition, refused to order additional tests, and gave inappropriate treatment as a result, but facts indicated inmate received adequate medical treatment). During his stay at Joliet, Jones was examined by medical staff approximately 68 times, on average more than twice a month. While at Stateville, Jones was seen by medical staff on approximately 413 instances, on average once every other day. Throughout this time period, the plaintiff received a significant amount of treatment including sitz baths, Metamucil, pain medications, and antibiotics. The plaintiff's expert, Martin, testified that the day-to-day treatment of Jones was appropriate and did not find the defendants refused to provide Jones with treatment. Jones also underwent four surgical procedures during this time period and Martin had no criticisms of these procedures.

The only incident of refusal of treatment documented by prison records is Smith's refusal to see Jones on February 2, 2000. Smith denied that he refused to see Jones so long as Jones was properly scheduled for an appointment. Further, despite Smith's refusal to meet with Jones, Jones was seen by medical personnel on February 2 and February 4. There is no evidence of a delay in treatment nor has Jones provided any medical evidence that any delay in treatment had a detrimental effect. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (noting that inmate

must provide medical evidence that delay in medical treatment has a detrimental effect). Even if there was a delay, occasional delays in treatment, which are isolated instances of neglect, do not constitute deliberate indifference. *Gutierrez*, 111 F.3d at 1375.

Jones is unable to provide any other date of when any defendant refused to see him, but appears to argue that failure to receive the type of treatment he prefers is a refusal of treatment. However, "differences in judgment between an inmate and medical personnel do not rise to the level of constitutional violations" and do not constitute a refusal of treatment. *Puente*, 2001 WL 1512543, at *4.

As for Jones's allegation that the defendants failed to examine him, there is evidence that Jones has refused examinations in his cell because he viewed it as unsanitary, but no evidence, other than Jones's testimony, of the defendants refusing to examine Jones. Even if the defendants failed to examine Jones each time he met with a physician, the necessity of a physical exam was a difference in judgment between the inmate and the doctor, which does not constitute deliberate indifference. *See id.* The court concludes that the plaintiff's evidence of the defendants' refusal to treat or examine Jones is insufficient to demonstrate deliberate indifference.

### 3. Failure to alter ineffective treatment

Jones also contends the defendants were deliberately indifferent by failing to alter ineffective treatment. The plaintiff's expert Martin's main criticism of the defendants' treatment, was that the defendants failed to perform a colonoscopy or refer Jones to an infectious disease specialist, a proctologist, or gastroenterologist to determine whether there was an underlying

11

cause for Jones's rectal problems. Jones also cites an error in Natesha's notes prior to the December 1999 surgery and an omission in the notes for the June 2000 surgery as evidence of indifference to Jones's medical needs. Jones argues that, had Natesha understood Jones's medical history, an investigative work up would have been appropriate, rather than the June 2000 surgery.

None of these complaints rise to the level of deliberate indifference as they all involve mere differences of opinion. Evidence of differences of opinion as to whether one course of treatment is preferable to another is insufficient to state a constitutional claim under the Eighth Amendment. *Snipes v. Detella*, 95 F.3d 586, 591 (7th Cir. 1996). The necessity of a referral is a difference of medical opinion between Martin and the defendants and Martin cannot determine whether an alternative treatment or diagnostic procedure would have been more effective. Thus, whether an alternative treatment plan would have been more beneficial or acceptable is pure speculation and insufficient to prove deliberate indifference. *Collignon v. Milwaukee County*, 163 F.3d 982, 990 (7th Cir. 1998). Also, the use of a colonoscopy and other diagnostic testing is "a classic example of a matter for medical judgment" and does not constitute deliberate indifference. *See Estelle*, 429 U.S. at 107 (finding the use of an x-ray or additional diagnostic testing a matter for medical judgment). Further, there is no evidence that Natesha's errors in his notes were an intentional or reckless act or that they impacted upon Jones's medical care. Natesha's actions did not violate the standard of care and whether surgery or an investigative work up was appropriate is a difference of medical opinion, which does not show Natesha acted with deliberate indifference. *See Snipes*, 95 F.3d at 591 (finding the issue of whether one course

of treatment is preferable to another is beyond the scope of the Eighth Amendment). The errors in the notes would constitute negligence at most, which is insufficient to state an Eighth Amendment violation. *Puente*, 2001 WL 1512543, at *4. Therefore, the court concludes the defendants did not act with deliberate indifference in failing to alter Jones's treatment.

In sum, the court finds neither of plaintiff's allegations, that the defendants refused to treat or examine Jones or that the defendants failed to alter ineffective treatment, constitute deliberate indifference. Because there is no evidence of deliberate indifference, the defendants are entitled to judgment as a matter of law on Jones's § 1983 claim. Accordingly, the court grants defendants' motions for summary judgment on Jones's § 1983 claim.[5]

### III. CONCLUSION

For the foregoing reasons, the court grants defendants' motions for summary judgment and denies as moot defendant Natesha's motion to strike.

Date: **DEC 05 2002**

James H. Alesia
United States District Judge

---

[5] In his motion for summary judgment, Natesha also argued he was not acting under color of state law because he is a private party. The court need not address this issue due to the plaintiff's failure to establish the deliberate indifference prong required for a § 1983 claim.

13